UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:26-CV-00137-GNS

MARCEL MIDDLETON PLAINTIFF

v.

REYNOLDS CONSUMER PRODUCTS LLC DEFENDANT

# MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss (DN 6), Plaintiff's Request to Proceed on Amended Complaint (DN 11), and Defendant's Motion to Strike Plaintiff's Amended Complaint (DN 13). The motions are ripe for adjudication.

## I. STATEMENT OF FACTS AND CLAIMS

Plaintiff Marcel Middleton ("Middleton") filed this action *pro se*, alleging employment discrimination and related claims under Kentucky law against Defendant Reynolds Consumer Products, LLC ("Reynolds"). (Compl. ¶¶ 12-14, DN 1-1). The allegations stem from other employees at Reynolds "circulat[ing] and discuss[ing]" a "video involving" Middleton in some way, leading to "comments regarding [Middleton's] sexual orientation." (Proposed Am. Compl. 1, DN 12). Perceiving these comments as harassment, Middleton allegedly "reported the conduct to supervisors and Human Resources[,]" who "failed to take corrective action." (Proposed Am. Compl. 1). Middleton eventually resigned "due to" these conditions. (Proposed Am. Compl. 1).

Middleton filed a lawsuit in Jefferson Circuit Court (Kentucky), bringing claims of "Employment Discrimination (KRS 344)[,]" "Defamation (Slander / Libel)[,]" and "Negligent Investigation / Due Process Violation[.]" (Compl. ¶¶ 12-14). Reynolds removed the case to this Court. (Notice Removal 1, DN 1). Reynolds then moved to dismiss the Complaint under Fed. R.

Civ. P. 12(b)(6). (Def.'s Mot. Dismiss 1, DN 6). After Middleton initially failed to respond, with mail being returned as undeliverable, the Court issued an Order granting additional time to respond and to provide an updated address. (Order 1, DN 8). Middleton then responded to Reynolds' motion and requested to "proceed on" an Amended Complaint ("Proposed Amended Complaint") filed the same day. (Pl.'s Resp. Def.'s Mot. Dismiss 1, DN 11; Proposed Am. Compl. 1). Reynolds moved to strike the Proposed Amended Complaint. (Def.'s Mot. Strike 1, DN 13).

## II. JURISDICTION

This Court has original jurisdiction of "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a)(1). Both parties are citizens of different states, and the amount in controversy exceeds the minimum jurisdictional limit of this Court. (Notice Removal ¶¶ 2-5).

## III. DISCUSSION

### A. Plaintiff's Request to Proceed on Amended Complaint (DN 11)

Reynolds has filed a Motion to Dismiss (DN 6) all claims in the original Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). In responding to the motion to dismiss, Middleton requested "[p]ermission to proceed on [an] Amended Complaint," which was filed the same day as the response. (Pl.'s Resp. Def.'s Mot. Dismiss 1; Proposed Am. Compl. 1). The Court construes this as a motion for leave to amend. *See* Fed. R. Civ. P. 15(a)(2). While Reynolds did not file a response as such to Middleton's request, Reynolds moved to strike Middleton's motion on the basis of futility—i.e., that the amended claims could not themselves survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). (Def.'s Mot. Strike 3, DN 13). As Middleton has moved to amend and Reynolds has effectively responded to that motion in its own motion, the Court

considers the motion to amend under Fed. R. Civ. P. 15. *See Mattingly v. Jeff Ruby's Louisville, LLC*, No. 3:18-cv-00565-RGJ, 2019 WL 7407708, at *1 (W.D. Ky. Feb. 6, 2019).

**1. *Standard of Review***

Fed. R. Civ. P. 15(a)(2) provides that, after the window during which a pleading can be amended as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." While "[t]he court should freely give leave when justice so requires[,]" leave to amend under Fed. R. Civ. P. 15 may be denied when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, *futility of amendment*, etc." Fed. R. Civ. P. 15(a)(2); *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).[1] "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Riverview Health Inst. LLC*, 601 F.3d at 520 (quoting *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)).

[1] Reynolds's motion to strike argues primarily that leave to amend should be denied because the amendment is futile, although it also contends that the amendment does not comply with Fed. R. Civ. P. 15(a)(2) because it was filed "without consent or leave of court." (Def.'s Mot. Strike 1). The Court, however, construes Middleton's "request[] . . . [for] [p]ermission to proceed on Amended Complaint," contained in Middleton's opposition brief filed simultaneously with the Proposed Amended Complaint, as a motion for leave to amend. (Pl.'s Resp. Def.'s Mot. Dismiss 1). Even if the Proposed Amended Complaint did not comply with Rule 15, Reynolds points to no prejudice from the amendment. *See Mattingly*, 2019 WL 7407708, at *2 ("Where a pleading is amended without leave of court or consent of opposing parties, it may either be considered a nullity, or taken as properly introduced 'as long as the amendments do not unfairly surprise or prejudice the defendant.'" (citations omitted)); *Tutt v. Cathers*, No. 6:20-cv-075-HRW, 2021 WL 518317, at *5 (E.D. Ky. Feb. 11, 2021) (considering *pro se* plaintiff's amended complaint despite the "failure to strictly comply with the requirements of Rule 15" because the failure "ha[d] been cured and there ha[d] been no real prejudice to [the defendant]").

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When considering a motion to dismiss, a court must "accept all the [plaintiff's] factual allegations as true and construe the complaint in the light most favorable to the [plaintiff]." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (alteration in original) (internal quotation marks omitted) (internal citation omitted) (quoting *Twombly*, 550 U.S. at 555).

"[*P*]*ro se* complaints are liberally construed and are held to less stringent standards than the formal pleadings prepared by attorneys." *McCormack v. Cnty. of Calhoun Inc. Form*, No. 23-1123, 2023 WL 5608806, at *1 (6th Cir. June 16, 2023) (alteration in original) (quoting *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 358 (6th Cir. 2012)). This "lenient treatment," however, "has limits." *Frengler v. Gen. Motors*, 482 F. App'x 975, 977 (6th Cir. 2012) (citation omitted); *see also Wells v. Brown*, 891 F.2d 591, 594 (6th Cir.1989) (recognizing lenient treatment of *pro se* plaintiffs, but noting that "trial and appellate courts should not have to guess at the nature of the claim asserted"). "[T]he less stringent standard for *pro se* plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations[,]" or to create a claim for a plaintiff. *Perry v. United Parcel Serv.*, 90 F. App'x 860, 861 (6th Cir. 2004); *Clark v. Nat'l Travelers Life*

*Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (citation omitted) (noting that to require otherwise would compel a court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party").

In a ruling based on Fed. R. Civ. P. 12(b)(6), a court may consider "the Complaint and any exhibits attached thereto . . . so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted). Additional facts asserted in a plaintiff's response to a motion to dismiss are not part of the pleadings and generally cannot be considered. *See* 2 *Moore's Federal Practice* § 12.34 (3d ed. 2008) ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a)."); *D.H. v. Matti*, 3:14-CV-732-CRS, 2016 WL 5843805, at *1 (W.D. Ky. Sep. 30, 2016) ("Plaintiff's counsel has used her responses to the present motions to dismiss to assert additional factual allegations, which the Court may not consider."). On the other hand, "some courts in this Circuit elect to consider the additional factual information" raised in a response to a motion to dismiss "as a supplement to the complaint when the plaintiffs are proceeding *pro se*." *Williams Huron Gardens 397 Tr. v. Twp. of Waterford*, No. 18-12319, 2019 WL 2051967, at *6 (E.D. Mich. Feb. 28, 2019) (citations omitted), *R. & R. adopted*, No. 18-12319, 2019 WL 1324242, at *1 (E.D. Mich. Mar. 25, 2019); *see also Carver v. Houchens Food Grp., Inc.*, No. 1:19-CV-00099-GNS-HBB, 2020 WL 2203842, at *3-5 (W.D. Ky. May 6, 2020) (citing *Williams*, 2019 WL 2051967, at *6) (considering factual allegations in both the complaint and the plaintiff's response to the motion to dismiss); *Dimov v. EMC Mortg. Corp.*, No. 1:09-CV-211,

2010 WL 2506717, at *1 n.1 (E.D. Tenn. June 17, 2010) ("In his response to [Defendant's] motion to dismiss, Plaintiff supplemented factual allegations in the complaint with some additional details . . . . [G]iven the liberal pleading standard in cases filed *pro se*, the Court will consider these additional factual allegations and construe them, along with the amended complaint, in the light most favorable to Plaintiff.").

Because the original Complaint and the Proposed Amended Complaint substantially overlap and are subject to the same Rule 12(b)(6) standard, and because Middleton is proceeding *pro se*, the factual allegations from both complaints and the response brief will be considered together for the sake of completeness. *See Green v. FedEx Supply Chain, Inc.*, No. 21-CV-2518-JPM-TMP, 2022 WL 19517286, at *7 (W.D. Tenn. Aug. 3, 2022) ("[F]or the sake of completeness, and because [the plaintiff] is proceeding *pro se*, the undersigned will construe [the plaintiff's] amended complaint as a supplement to his original complaint, and thus will address both complaints in tandem."), *report & recommendation adopted*, No. 2:21-CV-02518-JPM-TMP, 2023 WL 2302036, at *1 (W.D. Tenn. Mar. 1, 2023), *aff'd*, No. 23-5256, 2024 WL 4425784, at *1 (6th Cir. June 17, 2024). Even considering all of Middleton's submissions together—out of an abundance of flexibility for a *pro se* plaintiff—the allegations contained in the Complaint, the Exhibits attached thereto, the Response to the Motion to Dismiss, and the Proposed Amended Complaint do not contain sufficient factual content to state a facially plausible claim for relief, as required to survive dismissal. *See* Fed. R. Civ. P. 12(b)(6); *Iqbal*, 556 U.S. at 678.

### 2. *Hostile Work Environment*

The Proposed Amended Complaint alleges a claim for "Hostile Work Environment" related to Middleton's "sexual orientation." (Proposed Am. Compl. 1). The original Complaint asserted "Employment Discrimination" under "KRS 344." (Compl. ¶ 12). The Court accordingly

construes the hostile work environment discrimination claim as being raised under the Kentucky Civil Rights Act ("KCRA"), KRS 344.010-344.990.

A hostile work environment claim can arise where "discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986); *Gray v. Kenton Cnty.*, 467 S.W.3d 801, 805 (Ky. App. 2014). Such a claim brought under the KCRA is "analyzed in the same manner as a claim brought under Title VII, its federal counterpart." *Gray*, 467 S.W.3d at 805 (quoting *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005)); *Ammerman v. Bd. of Educ. of Nicholas Cnty.*, 30 S.W.3d 793, 797-98 (Ky. 2000). Under Title VII, discrimination "based on sex" includes discrimination based on homosexuality or transgender status. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 660 (2020) ("[I]t is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex.").[2]

Reynolds argues that the Proposed Amended Complaint "does not allege that [Middleton] is a member of a protected class, that the alleged harassment was traceable to his membership in that class, or that Reynolds is vicariously liable for the harassment." (Def.'s Mot. Strike 4). Under the *McDonnell Douglas* burden-shifting framework—which applies at summary judgment—a

[2] The Proposed Amended Complaint alleges "harassment and comments regarding Plaintiff's sexual orientation." (Proposed Am. Compl. 1). Reynolds has not directly argued that Middleton's sexual orientation is not a protected category under the KCRA, but avers that the "Amended Complaint does not allege that [Middleton] is a member of a protected class, [or] that the alleged harassment was traceable to his membership in that class . . . ." (Def.'s Mot. Strike 4). For purposes of this motion it is assumed, without being decided, that sexual orientation is protected under the KCRA as it is under Title VII. *See Cimbalo v. BASF Corp.*, No. 3:21-cv-309-DJH, 2022 WL 696798, at *4 (W.D. Ky. Mar. 8, 2022) (declining to dismiss a retaliation claim under the KCRA after finding that "[a]bsent a state-court decision to the contrary and assuming the Kentucky Supreme Court continues its longstanding practice of interpreting the KCRA 'consonant with' Title VII, the Court anticipates that the KCRA's prohibition on 'sex' discrimination would be found to include discrimination on the basis of sexual orientation." (citations omitted)).

prima facie case of a hostile work environment claim requires a plaintiff to "show that: (1) [the plaintiff] was a member of a protected class; (2) [the plaintiff] was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the employer is liable." *Bruce v. Adams & Reese, LLP*, 168 F.4th 367, 376 (6th Cir. 2026) (quoting *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006)); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The *McDonnell Douglas* burden-shifting standard, however, is not applied when "consider[ing] allegations of harassment at the pleading stage." *Bruce*, 168 F.4th at 376 (citing *Keys v. Humana*, 684 F.3d 605, 609 (6th Cir. 2012)); *see also Keys*, 684 F.3d at 609 ("[T]he prima facie case under *McDonnell Douglas* is an evidentiary standard, not a pleading requirement." (citation omitted)). Rather, "the question is simply whether [Middleton's] complaint allege[s] sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that [Middleton] was subjected to a hostile work environment." *Bruce*, 168 F.4th at 376-77 (third alteration in original) (internal quotation marks omitted) (citations omitted).

"A hostile work environment exists [w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 377 (alteration in original) (internal quotation marks omitted) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "Courts consider the totality of circumstances in determining the severity and pervasiveness of alleged harassment, including 'the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance.'" *Ogbonna-McGruder v.*

*Austin Peay State Univ.*, 91 F.4th 833, 840-41 (6th Cir. 2024) (alterations in original) (quoting *Harris*, 510 U.S. at 23). "Notably, the alleged harassment must be both *objectively* and subjectively severe [or] pervasive to be actionable." *Id.* (emphasis added) (citing *Harris*, 510 U.S. at 23). "As the Supreme Court has stressed, '[t]hese standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code. Properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, [gender]-related jokes, and occasional teasing." *Middleton v. United Church of Christ Bd.*, No. 20-4141, 2021 WL 5447040, at *4 (6th Cir. Nov. 22, 2021) (first alteration in original) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). A plaintiff need not "'recount' each and every 'specific instance[]'" of allegedly harassing comments, but the well-pleaded factual allegations must be enough to permit the reasonable inference that the conduct was sufficiently severe or pervasive as to alter the conditions of employment. *Bruce*, 168 F.4th at 377 (alteration in original) (citation omitted).

Taking as true only the factual allegations across Middleton's submissions—excluding labels, conclusions, and bare recitations of the elements—Middleton has not stated a facially plausible claim of a hostile work environment. The specific factual allegations, construed liberally in Middleton's favor, include that: (i) Middleton was employed by Reynolds from April 2023 to August 2025; (ii) an "alleged explicit video" which "involv[ed]" Middleton in some way, but which Middleton never had the "opportunity to view," was "circulated and discussed" by Middleton's coworkers at Reynolds; (iii) "multiple coworkers . . . over time" made "repeated . . . comments" about Middleton's "sexual orientation"; (iv) Middleton, at least, perceived the comments as harassing; (v) Middleton "reported the conduct to supervisors and Human Resources," but they did not "take corrective action"; and (vi) "due to" the coworkers' continuing

conduct, Middleton resigned. (Compl. ¶¶ 5, 7-8; Pl.'s Resp. Def.'s Mot. Dismiss 1; Proposed Am. Compl. 1; *see also* Compl. Exs., at 13, DN 1-1 (as stated in Middleton's EEOC inquiry: "I complained to my employer about job discrimination [on] 01/09/2025[.]")).

An exhibit attached to the original Complaint also appears to show the use of derogatory terms relating to sexual orientation and race. The scanned document in the record is largely obscured, with only what appears to be the words "[F-slur] Ass [N-word]" visible.[3] (Compl. Exs., at 23). The submissions do not provide context or explain in any way what this document is, who wrote the words or where, or in reference to whom. Nevertheless, construing the pleadings liberally in favor of a *pro se* plaintiff, and treating this document as reflecting a comment by a coworker regarding Middleton's sexual orientation, this offensive language is concerning. Middleton has not, however, provided any other non-conclusory factual support indicating the content, frequency, or severity of the coworkers' "comments." The Proposed Amended Complaint merely indicates in conclusory or vague fashion that their comments constituted "harassment" and that "[m]ultiple coworkers" made "statements" and "comments . . . over time" about Middleton's sexual orientation. (Pl.'s Resp. Def.'s Mot. Dismiss 1; Proposed Am. Compl. 1).

While the federal pleading standard does not "demand [] a detailed telling of each offensive utterance," *Bruce*, 168 F.4th at 380, "the Sixth Circuit has made it clear that a hostile work environment claim should be dismissed if a plaintiff fails to allege sufficient factual material to

[3] As regards race, aside from the partially-obscured word in this one exhibit, the only other apparent reference to race across all of the submissions is in Middleton's EEOC inquiry, attached as an exhibit to the original Complaint, which included "color" in a list of categories that Middleton's EEOC filing was "regarding[.]" (Compl. Exs., at 13). Middleton has otherwise made no indication of a desire that any of the claims alleged in this action should be considered as race-based, rather than as based on "sexual orientation," as presented in the Proposed Amended Complaint. (Proposed Am. Compl. 1). Nor do the factual allegations present an apparent claim for discrimination based on race.

support a plausible inference that their workplace was characterized by severe or pervasive harassment." *Davis v. Berkley Urgent Care, P.L.L.C.*, No. 25-CV-11100, 2026 WL 852016, at *9 (E.D. Mich. Mar. 27, 2026); *see also Ogbonna-McGruder*, 91 F.4th at 840 (affirming dismissal of a racial hostile working environment claim which failed to allege sufficient facts to infer severe or pervasive harassment, despite alleging four distinct events of verbal abuse and professional criticism that "could constitute harassment" and which occurred over the course of two and a half years); *Middleton*, 2021 WL 5447040, at *4 (affirming dismissal of plaintiff's claim of an anti-Black hostile work environment despite allegations of multiple, isolated, offensive comments from co-workers and her supervisor's failure to act when the comments were reported).[4]

Because all of Middleton's submissions, taken together and construed liberally in favor of a *pro se* plaintiff, do not provide a sufficient factual basis to reasonably infer that Middleton was subjected to a hostile work environment by Reynolds, the proposed amendment would be futile. *See Iqbal*, 556 U.S. at 678; *Rose*, 203 F.3d at 420. Leave to amend is therefore denied as to the claim of Hostile Work Environment in the Proposed Amended Complaint. (Proposed Am. Compl. 1); *see* Fed. R. Civ. P 15(a).

---

[4] Although in a different procedural posture, on summary judgment, a sister court recently found that workplace conduct involving repeated use of the F-slur by coworkers over a period of six months did not rise to the level of severe or pervasive harassment based on sexual orientation. *Hamm v. Pullman SST, Inc.*, No. 22-11456, 2025 WL 792869, at *5 (S.D. Mich. Mar. 12, 2025) (granting summary judgment to defendant on hostile work environment claim and finding the "workplace conduct was not sufficiently severe or pervasive to measure up to the bar for establishing an intolerably hostile environment" where testimony established "around a dozen incidents over the course of six months in which various co-workers referred to the plaintiff using insults or insinuations that could be viewed as related to his sexual orientation[,]" including numerous uses of the F-slur, but had "not presented any evidence that any of the encounters involved physical threats or intimidation" or "that any of the incidents in any way interfered with the performance of his work"), *aff'd on other grounds*, 167 F.4th 382 (6th Cir. 2026).

### 3. *Discrimination — Constructive Discharge*

The Proposed Amended Complaint also asserts a claim for "Discrimination . . . ." (Proposed Am. Compl. 1). Because the original Complaint claimed "Employment Discrimination" under "KRS 344," the Court again construes the "discrimination" claim as being raised under the KCRA. (Compl. ¶ 12). The KCRA prohibits, as "an unlawful practice," employers from taking certain actions "because of [an] individual's . . . sex . . . ." KRS 344.040. Middleton's hostile work environment claim, which has already been discussed, is a subtype of a harassment claim, which is itself a subtype of a discrimination claim. *See Meritor Sav. Bank, FSB*, 477 U.S. at 66. Although Middleton does not expand on the underlying theory of "discrimination," construing the Proposed Amended Complaint liberally, the Court considers Middleton's claim that "Plaintiff was forced to resign *due to* intolerable conditions[]"—i.e. the alleged continuing comments by coworkers about Middleton's sexual orientation—as presenting a discrimination claim under a constructive discharge theory, and more specifically a hostile-environment constructive discharge theory. (Proposed Am. Compl. 1 (emphasis added)).

"This Court has held that '[c]onstructive discharge, even if shown, does not support an independent cause of action[]'" under Kentucky law. *Marrero-Perez v. Yanfeng US Auto. Interior Sys. II LLC*, No. 3:21-CV-645-RGJ, 2022 WL 4368165, at *5 (W.D. Ky. Sep. 21, 2022) (alteration in original) (quoting *Sullivan v. Paycor, Inc.*, No. 3:13-CV-00028-JGH, 2013 WL 2286069, at *3 (W.D. Ky. May 23, 2013)) (dismissing a purported "stand-alone claim" of constructive discharge under Kentucky law). "Instead, a constructive discharge may constitute an adverse employment action, which can be an element of a [discrimination] claim under the KCRA." *Id.* (citing *Brooks v. Lexington-Fayette Urb. Cnty. Hous. Auth.*, 132 S.W.3d 790, 807 (Ky. 2004)). Such claims under the KCRA are "interpreted consonant with federal interpretation[]" of Title VII. *Hamilton*

*v. Gen. Elec. Co.*, 556 F.3d 428, 434 (6th Cir. 2009) (quoting *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 793 (6th Cir. 2000)).

As the Supreme Court has explained:

> The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his "working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." When the employee resigns in the face of such circumstances, Title VII treats that resignation as tantamount to an actual discharge.
>
> A claim of constructive discharge therefore has two basic elements. A plaintiff must prove first that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign. [And] he must also show that he actually resigned.

*Green v. Brennan*, 578 U.S. 547, 555 (2016) (internal citations omitted). "[W]orkplace harassment that is severe [or] pervasive enough to create a hostile work environment may in some circumstances constructively discharge the employee." *Plautz v. Potter*, 156 F. App'x 812, 819 (6th Cir. 2005). Under this theory, however, "[c]reation of a hostile work environment is a *necessary predicate* to a hostile-environment constructive discharge case." *Pa. State Police v. Suders*, 542 U.S. 129, 149 (2004) (emphasis added).

As discussed above, Middleton's submissions have not stated a facially plausible claim of a hostile work environment. Accordingly, they necessarily cannot state one for hostile-environment constructive discharge. *See Cooper v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, 742 F. Supp. 2d 941, 956 (W.D. Tenn. 2010) ("The bar for proving constructive discharge is higher than that for a hostile work environment claim . . . ." (citation omitted)); *Plautz*, 156 F. App'x at 819 (affirming summary judgment against plaintiff on "hostile environment constructive discharge" claim, because having "already decided that the complained of actions do not rise to the level of creating a hostile work environment, [] therefore they necessarily do not rise to the level of compelling a reasonable person to resign"). Leave to amend would therefore be futile,

and is denied as to the claim of "Discrimination" in the Proposed Amended Complaint. (Proposed Am. Compl. 1); *see Rose*, 203 F.3d at 420; Fed. R. Civ. P 15(a).

#### 4. *Retaliation*

Middleton's proposed Amended Complaint also asserts a claim for "Retaliation . . . ." (Proposed Am. Compl. 1). Once again, the Court construes the retaliation claim as being raised under the KCRA. KRS 344.010-344.990; (Compl. ¶ 12). As the Sixth Circuit has noted:

> Under the KCRA, it is unlawful "[t]o retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter."

*Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 503-04 (6th Cir. 2014) (alteration in original) (quoting KRS 344.280(1)). "Retaliation claims under the KCRA are evaluated under the same standard as . . . federal Title VII claims." *Id.* at 503-04 (citing *Hamilton*, 556 F.3d at 435). As this Court has further noted:

> To demonstrate a *prima facie* case of retaliation, a plaintiff must show that: '(1) the plaintiff engaged in protected activity; (2) that the exercise of [the plaintiff's] civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.'

*Powe v. Univ. of Louisville*, No. 3:24-CV-220-RGJ, 2026 WL 1864707, at *9 (W.D. Ky. June 29, 2026) (quoting *Wilson v. Bosse*, No. 2019-CA-1800-MR, 2020 WL 7295207, at *4 (Ky. App. Dec. 11, 2020)). Here again, Middleton is not required to plead a prima facie case at this stage, only to allege sufficient "factual content" to allow the "reasonable inference" that Reynolds retaliated against Middleton for engaging in protected activity. *Iqbal*, 556 U.S. at 678.

Reynolds argues that Middleton "does not allege that [1] Reynolds disadvantaged him or that [2] any such disadvantage was tied to Middleton's protected activity." (Def.'s Mot. Strike 5). The Proposed Amended Complaint has plausibly alleged protected activity by alleging that

Middleton "reported" conduct by other employees, which Middleton perceived as harassment based on sexual orientation, "to supervisors and Human Resources . . . ." (Proposed Am. Compl. 1); *see, e.g.*, *Wasek v. Arrow Energy Servs.*, 682 F.3d 463, 469 (6th Cir. 2012) ("[C]omplaining about allegedly unlawful conduct to company management is classic opposition activity." (citation omitted)).

However, Middleton does not identify any allegedly retaliatory action related to this reporting, only alleging that "supervisors and Human Resources" did not "take corrective action." (Proposed Am. Compl. 1). Construing the submissions liberally in favor of a *pro se* plaintiff, the only employment action taken against Middleton that can be identified, is in the exhibits to the original Complaint. These exhibits include "Labor Relations Complaint Form[s]," some of which are obscured, others of which are at least partially visible, and indicate that Middleton was subjected to a series of disciplinary actions at Reynolds in 2025, including suspensions. (Compl. Exs., at 21-22, 24). The documents that are visible indicate that on May 16, 2025, Middleton was suspended "pending investigation for Theft of Time[,]"and on July 30, 2025, Middleton was again suspended "pending investigation" for a "No Show," as "Step 6" in a series of corrective actions, the earlier steps of which are partially obscured. (Compl. Exs., at 21-22). Middleton has not provided any factual allegations, nor even any conclusory statements or arguments, tying these documented suspensions to Middleton's act of reporting several months earlier.

The federal pleading standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). Middleton's submissions do not provide sufficient factual basis, taken as true, to reasonably infer that Reynolds retaliated against Middleton for protected activity, in violation of the anti-retaliation prohibition of the KRCA. *See* KRS 344.280(1). Accordingly, because the proposed amendment would be futile, leave to amend

is denied as to the "Retaliation" claim in the Proposed Amended Complaint. (Proposed Am. Compl. 1); *see Rose*, 203 F.3d at 420; Fed. R. Civ. P 15(a).

**5. *Invasion of Privacy***

The Proposed Amended Complaint finally asserts a claim of "Invasion of Privacy." (Proposed Am. Compl. 1). "The Supreme Court of Kentucky has adopted the Restatement (Second) of Torts' principles for the tort of invasion of privacy." *K.K. ex rel. J.K. v. Clark Cnty. Bd. of Educ.*, 439 F. Supp. 3d 905, 919 (E.D. Ky. 2020) (citing *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 887 (Ky. 1981)). An invasion of privacy can occur by:

> (a) unreasonable intrusion upon the seclusion of another . . . ; or (b) appropriation of the other's name or likeness . . . ; or (c) unreasonable publicity given to the other's private life . . . ; or (d) publicity that unreasonably places the other in a false light before the public . . . .

Restatement (Second) of Torts § 652A (A.L.I. 1977). "Each form of invasion of privacy has different elements." *K.K. ex rel. J.K.*, 439 F. Supp. 3d at 919 (citations omitted). Middleton has alleged invasion of privacy without giving any indication of which form of the tort occurred. While that is not in and of itself a bar to recovery, the factual allegations also do not present an apparent basis for an invasion of privacy claim against Reynolds under any of these four theories. The only factual allegations that can be construed as a possible basis for this claim is that an "alleged explicit video" involving Middleton was "circulated and discussed" by coworkers at Reynolds. (Compl. ¶ 7; Pl.'s Resp. Def.'s Mot. Dismiss 1; Proposed Am. Compl. 1). This is not enough, standing alone, to plausibly state any of the four forms of invasion of privacy.

First, "to prevail on a claim for intrusion upon seclusion, a plaintiff must show '(1) an intentional intrusion by the defendant, (2) into a matter the plaintiff has a right to keep private, (3) which is highly offensive to a reasonable person.'" *Wells v. Craig & Landreth Cars, Inc.*, No. 3:10-CV-376-CRS-JDM, 2012 WL 6487392, at *5 (W.D. Ky. Dec. 13, 2012) (citing *Smith v. Bob*

*Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 822 (W.D. Ky. 2003)). Intrusion upon seclusion "does not depend upon any publicity given" to the plaintiff, rather it is "[t]he intrusion itself" that makes a defendant liable. Restatement (Second) of Torts § 652B cmt. a-b (A.L.I. 1977). There are no facts alleging an intrusion in this case. *See Singapore Ministry of Health v. Farrera-Brochez*, No. CV 5:19-051-DCR, 2019 WL 6332136, at *2 (E.D. Ky. Nov. 25, 2019) (citing Restatement (Second) of Torts § 652B cmt. b) (noting that examples of such "intrusion" include "an unauthorized investigation into an individual's private concerns such as opening private mail, searching a person's safe or wallet, examining a person's bank account, or presenting a forged court order to permit inspection of personal documents.").

Second, to impose liability for appropriation of another's name or likeness, "the defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." *Thornton v. W. & S. Fin. Grp. Beneflex Plan*, 797 F. Supp. 2d 796, 814 (W.D. Ky. 2011) (quoting *Foster v. Livingwell Midwest, Inc.*, 865 F.2d 257, 1988 WL 134497, at *2 (6th Cir. Dec. 16, 1988) (applying Restatement (Second) of Torts § 652C cmt. c to Kentucky law)). There are no factual allegations indicating any such appropriation in this case.

Third—and fourth—"[u]nder Kentucky law, unreasonable publication and false light are separate theories of recovery with separate elements, but *both require* that the plaintiff demonstrate that the matter was *publicized*." *Finney v. Bank of Am., Nat'l Ass'n*, No. 3:24-CV-00163-CHL, 2025 WL 3496674, at *5 (W.D. Ky. Dec. 5, 2025) (emphasis added) (citing Restatement (Second) of Torts § 652D cmt. a (unreasonable publication); *id.* § 652E cmt. a (false light)). "A matter is publicized" for purposes of unreasonable publication or false light, "if it has been made public, or communicated to the public at large, or communicated to so many persons that the matter must be

regarded as substantially certain to become one of public knowledge." *Id.* (citing Restatement (Second) of Torts § 652D cmt. a). Middleton's allegation that coworkers "circulated and discussed" a video at work, without more, does not plausibly allege the sort of publication required for either unreasonable publication or false light. (Proposed Am. Compl. 1).

Finally, even if there had been an invasion of privacy by Middleton's *coworkers*, there is no indication that the conduct would be attributable to Reynolds as the employer. *See, e.g., Doe v. Ashland Hosp. Corp.*, No. 2021-CA-0466-MR, 2022 WL 815221, at *2 (Ky. App. Mar. 18, 2022) (rejecting an invasion of privacy claim against an employer because "there can be no claim for *respondeat superior* liability where an employee engages in wrongful conduct while he or she is not acting to advance the cause of his or her employer"). Because the submissions do not state a facially plausible claim for invasion of privacy, amendment would be futile, and leave to amend is accordingly denied as to the "Invasion of Privacy" claim in the Proposed Amended Complaint. (Proposed Am. Compl. 1)

Having determined that none of the claims for "Hostile Work Environment[,] Discrimination[,] Retaliation[,] [or] Invasion of Privacy" presented in Middleton's Proposed Amended Complaint could survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the proposed amendment as a whole is futile. Leave to amend is therefore denied. (Proposed Am. Compl. 1); *see Rose*, 203 F.3d at 420; Fed. R. Civ. P 15(a).

**B. <u>Defendant's Motion to Dismiss (DN 5)</u>**

Reynolds has also filed a motion to dismiss all claims in the original Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The standard is the same as that already applied to determine futility of the proposed amendment. *See* Fed. R. Civ. P. 12(b)(6); *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citation omitted)).

### 1. *Employment Discrimination*

The original Complaint asserted a claim of "Count I – Employment Discrimination (KRS 344)[.]" (Compl. ¶ 12). As discussed, the Proposed *Amended* Complaint's claims for "Hostile Work Environment[,] Discrimination[,] [and] Retaliation . . ." under the KCRA each fail to state a claim that can survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). (*See* Proposed Am. Compl. 1); KRS 344.010-344.990. Seeing no other bases for a claim of "Employment Discrimination" under the KCRA beyond the theories already addressed, Reynolds' motion to dismiss is granted as to Count I of the Complaint, and that claim is dismissed without prejudice. *See* Fed. R. Civ. P. 12(b)(6); (Def.'s Mot. Dismiss 1).

### 2. *Defamation*

The Complaint also asserted a claim of "Count II - Defamation (Slander / Libel)." (Compl. ¶ 13). There are no identifiable factual allegations which would support this claim, only conclusory recitations of the elements: "[F]alse statements about Plaintiff, Marcel Middleton, were communicated to supervisors, coworkers, and third parties, causing reputational and emotional harm." (Compl. ¶ 10). Reynolds' motion to dismiss is therefore also granted as to Count II of the Complaint, and that claim is dismissed without prejudice. *See* Fed. R. Civ. P. 12(b)(6); *Iqbal* 556 U.S. at 678; (Def.'s Mot. Dismiss 1).

### 3. *Negligent Investigation/Due Process Violation*

The original Complaint finally asserted a claim of "Count III – Negligent Investigation / Due Process Violation," stating that "[Reynolds] failed to conduct a fair and reasonable investigation, relied on hearsay, and ignored [Middleton's] right to review evidence, causing

foreseeable harm to Marcel Middleton." (Compl. ¶ 14). As has been noted, the attached exhibits include Labor Relations Complaint Forms showing two "suspension[s] pending investigation . . . ." (Compl. Exs., at 21-22). None of Middleton's submissions, however, provide non-conclusory factual allegations to explain what was wrong with any investigations or to otherwise provide any factual basis for this claim. Additionally, to the extent that Middleton has invoked the constitutional principle of "due process," there is no indication that Reynolds is anything other than a private party. "[T]he Fourteenth Amendment, which prohibits the states from denying federal constitutional rights and which guarantees due process, applies to acts of the states, not to acts of private persons or entities." *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (citations omitted). While *pro se* plaintiffs are accorded lenient treatment, courts "should not have to guess at the nature of the claim asserted." *Wells*, 891 F.2d at 594 (citation omitted). Reynolds' motion to dismiss is therefore also granted as to Count III of the Complaint, and that claim too is dismissed without prejudice. *See* Fed. R. Civ. P. 12(b)(6); (Def.'s Mot. Dismiss 1).

### C. Defendant's Motion to Strike (DN 13)

Reynolds also filed a motion to strike the Proposed Amended Complaint. (Def.'s Mot. Strike 1). Reynolds has not argued that the Proposed Amended Complaint contained any "redundant, immaterial, impertinent, or scandalous matter[,]" which are grounds to strike material from a pleading under Fed. R. Civ. P. 12(f), only contending that the proposed amendment would be futile. (Def.'s Mot. Strike 1). Having denied leave to amend, Reynolds' motion to strike is denied as moot.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Request to Proceed on Amended Complaint (DN 11) is **DENIED**.

2. Defendant's Motion to Strike Plaintiff's Amended Complaint (DN 13) is **DENIED AS MOOT**.

3. Defendant's Motion to Dismiss (DN 6) is **GRANTED**, and the Complaint is **DISMISSED WITHOUT PREJUDICE**.

4. The Clerk shall strike this matter from the active docket.

**Greg N. Stivers, Judge**
**United States District Court**
October 14, 2026

cc: counsel of record
Plaintiff, *pro se*